Argued April 22, affirmed June 3, 1959

IN THE MATTER OF THE ESTATE OF MARY LOFTUS,
DECEASED

ERICKSON *v.* DAVIDSON, EXECUTOR

339 P. 2d 1081

*William Huey* and *Clyde N. Johnston,* Eugene, argued the cause and filed a brief for appellant.

*Lewis Hoffman* argued the cause for respondent and cross-appellant. On the brief were Bailey, Hoffman & Spencer, Eugene.

Before Rossman, J., Presiding, and Perry, Sloan and Crawford, Justices.

SLOAN, J.

This is an appeal from an order of the circuit court admitting to probate the last will and testament of the deceased, Mary Loftus. The contestant-appellant, Erickson, was a first cousin and apparently the sole heir of deceased. The contestant, Folette, was a creditor of deceased who had petitioned the court for the appointment of an administrator. He has not appealed. The respondent, Davidson, is the executor named in the contested will. He and his wife, Lois Davidson, are accused of being the persons who subjected the deceased to the evil influence alleged. They are the proponents of the will. In the same decree the trial court refused to admit a codicil to the will and the proponents cross appeal from that part of the decree and order entered by the court.

The will in question was executed by deceased on December 21, 1954. At that time she was a widow about 78 years of age. There is some conflict as to her age. Her home was in Florence where she had resided for several years prior to her death. Her husband predeceased her by about ten years. She and

her husband had invested rather wisely and accumulated property of substantial value. The marriage was childless.

The will in question made specific bequests to various persons and charities. It contained substantial bequests to the proponents. The residuary estate was bequeathed to a charity. Two of the persons receiving specific bequests were alleged to be the natural objects of her bounty. One of these, Woodrow Jerome, had lived in the home of the deceased in earlier years. He was a relative of a former husband of deceased, but held no blood tie to her. The other, Lee Helmick, had been an employe and close friend of deceased for many years. She, neither, was an heir. We mention these two individuals specifically for it is contended that the failure of deceased to give to them a greater share of her estate is evidence of the influence exerted upon her by proponents. The contestant cousin, Erickson, however, would appear to be the sole beneficiary if the will were set aside.

■ The will was prepared by an attorney practicing in Florence and executed in the home of the deceased in the presence of the attorney and his secretary. It is conceded that at the time of making the will she was of sound mind and fully capable of making testamentary disposition of her property. The only issue concerning the will is the allegation of undue influence.

We mention only generally the nature of the accusations of undue influence. Mr. and Mrs. Davidson moved to Florence some years prior to the events challenged. He was an undertaker. They became acquainted with deceased and developed an agreeable and helpful disposition toward her. It should be mentioned that the deceased was of Norwegian extraction.

There is some conflict in the evidence as to her ability to read and write English. There is no contention that she could not fully understand spoken English. The evidence would indicate to one having some familiarity with aging Norwegians that she was and had been industrious and farsighted; possessed of native acumen and one whose kindness and traits of character had brought to her in abundance the affection of her neighbors and friends. She was not without a strong mind of her own.

It is charged that the Davidsons, particularly Mrs. Davidson, lavished care and attention upon her, excluded her from her other friends, influenced her in the choice of an attorney to prepare the will and through the attorney exerted influence upon the nature of the testamentary disposition. The contestants list 19 suspicious circumstances to justify their allegations.

We have examined the entire record and find the so-called "suspicions" or inferences to be baseless. There is not one word of evidence to indicate that the so-called "influencers" had any personal knowledge that the deceased was contemplating a will; suggested to her or solicited any consideration thereof; had discussed it with the attorney who prepared it or had the slightest participation or influence in its terms or considerations. *Harritt v. Linfoot, Executor*, 210 Or 354, 311 P2d 450; *Trombly v. McKenney, Ex.*, 191 Or 90, 109, 288 P2d 417. Instead we are asked to infer such influence because of the relationship between the attorney who prepared the will and the proponents. It was established that at the time the will was executed the proponent, E. A. Davidson, was the mayor of Florence and the attorney was the city attorney; that the attorney may have attempted to effect some small

collections for the proponents at or prior to that time. Based upon such a relationship only, we are asked to infer that this attorney was so callous to his duty that he connived with proponents to induce the deceased to name proponents in her will. We need add nothing further to indicate the spurious character of these contentions by the contestants. There is not the slightest evidence to so impinge the conduct of the attorney. Other so-called suspicious circumstances are about of like merit.

We cite only one other example of the evidence contained in this record. It is contended that proponents were able to cause the deceased to exclude her former friends from visiting in decedent's home. One such person was a salesman selling chicken feed who was denied admittance two days before her death, when she was admittedly dying! In fact, to the extent it is worth mentioning the excluding in that instance was by persons other than proponents. Other friends did testify that they would not stop to see deceased when the Davidson car was parked at her home. However, there is no evidence that either Davidson was responsible for this reluctance. Testimony of other witnesses who were frequently present in deceased's home when Mrs. Davidson was there do not give any indication that Mrs. Davidson was attempting to exclude others or was guilty of any of the conduct charged. The testimony of Woodrow Jerome and his wife, who lived in Seattle, concerning a visit of several days at the home of deceased certainly does not reflect any influence being exerted on deceased by the Davidsons.

It is also alleged, and the trial court found, that a confidential relationship between the Davidsons and decedent existed. We doubt that the evidence sustains

such a finding as of the date the will was executed. Even so, however, we agree with the trial court that the evidence is completely lacking in every respect necessary to actually prove that the will was not the free expression of the testatrix's untainted intent.

That she was influenced by the kindness extended to her by proponents could scarcely be challenged. But it is not possible to find that the attentive interest of the proponents was intended to mesmerize the decedent for their gain. *In re Kelley's Estate,* 150 Or 598, 617, 46 P2d 84; *Reddaway v. Reddaway,* 67 Or Adv Sh 69, 329 P2d 886.

■ It should again be noted that the two persons who are asserted to be the natural objects of her bounty were neither heirs nor ones to whom the decedent could be said to have a moral, and certainly not a legal, cause to provide for. *In re Walther's Estate,* 177 Or 382, 397, 163 P2d 285. In fact if the will should be set aside they would lose the bequest made for them in the will and the entire estate would go to the contestant, the sole heir. It cannot be said, therefore, that her failure to provide in greater proportions to them rendered the will unnatural. *Reddaway v. Reddaway,* supra. The reference of Woodrow Jerome, in his testimony, to the deceased as "mother" did not make her so.

■ The codicil was executed by a somewhat less acceptable process. A few days before her death the deceased was stricken by a strangulated hernia. She accepted medical comfort but knowingly refused surgery, the only treatment recommended to her by the attending doctor for her survival. About two days before her death the proponent, Lois Davidson, apparently at the request of deceased, prepared a brief paper or document purporting to be testamentary in

character. It attempted to devise one item of real property to Mrs. Davidson and another portion of real property to another person, named Johnson. The document bears the signatures of three persons as witnesses. It was placed in an envelope on which was written "codicil." It is apparent from the testimony that the witnesses did not know the nature of the document whose execution they were called upon to witness. Without consideration of the evidence of alleged improper influence upon the part of Mrs. Davidson at that time, the evidence as to the manner of the execution of the codicil denies its right to probate. *Richardson v. Orth,* 40 Or 252, 262, 66 P 925, 69 P 455.

We are told that the codicil itself, and its method of execution, present some evidence that proponent Lois Davidson was capable of formulating an intent to influence improperly the deceased and to accept in full the benefits that might thereby be derived. Whatever may be said about the alleged influence of Mrs. Davidson as to the execution of the codicil, it does not reflect on the execution of the will itself and the convincing evidence that it expresses the true free intent of the testatrix. "Undue influence must manifest itself and be exerted about the time of the execution of a will in order to vitiate it." *Roblin v. Schantz, Executrix,* 210 Or 371, 378, 311 P2d 459.

The decree is affirmed.